UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| CATHY C. SHANKS,   ) | |
|     *Plaintiff*,   ) | |
|                    ) | |
|     *vs*.          ) | 1:08-cv-01729-JMS-WTL |
|                    ) | |
| MICHAEL J. ASTRUE, Commissioner of the   ) | |
| Social Security Administration,   ) | |
|     *Defendant*.   ) | |

### ENTRY REVIEWING THE COMMISSIONER'S DECISION

Plaintiff, Cathy C. Shanks, applied for Disability Insurance Benefits and for Supplemental Security Income through the Social Security Administration (the "SSA") in July 2003, alleging that she has been disabled and thus unable to work since March 2001. [R. 24.][1] After a series of administrative proceedings and appeals, including a hearing in June 2006 and a supplemental hearing in November 2006 before Administrative Law Judge ("ALJ") James Norris, the SSA finally denied her application. [*Id.*; dkt. 1.] Ms. Shanks then filed this action for judicial review of the SSA's denial of applications for benefits.

### BACKGROUND

Despite the lengthy administrative record in this case—spanning almost a thousand pages—only a few facts merit discussion here.

Ms. Shanks suffers from a host of physical and mental ailments. To help the ALJ fully evaluate Ms. Shanks' applications, the ALJ summoned Dr. Thomas, a licensed clinical psychologist, to testify as a medical expert. [*See* R. 24.] In his opinion, Ms. Shanks has an affective disorder (depression) that is "close" to being conclusively disabling under the SSA's

---

[1] Upon the written consent of the parties, this matter has been assigned to the magistrate judge for all proceedings, including for the entry of judgment, pursuant to 28 U.S.C. § 636(c) and Fed. R. Civ. P. 73. [Dkt. 12.]

regulations. [R. 1030.] But because the evidence only shows that family stressors trigger decompensation, rather than those of "the work setting per se," Dr. Thomas decided that her affective disorder couldn't satisfy the requirements. [R. 1031.] He did acknowledge that "it would be rather difficult to have a decompensation due to the work setting when you don't have a person in the work setting." [*Id*.] Ms. Shanks had been out of the work setting for at least four years by the time Dr. Thomas testified. [R. 25.] Additionally, even though her affective disorder wasn't conclusively disabling, Dr. Thomas believed that it was severe enough to limit Ms. Shanks to "low-stress" jobs that did not require "production" or to satisfy "work quotas." [R. 1032.]

The ALJ also summoned a vocational expert to testify about the jobs that Ms. Shanks was qualified to perform, given the limitations that the ALJ found Ms. Shanks to have, which were limitations to light or sedentary work, of a simple and repetitive nature, with only occasional or incidental contact with others, and without requirements to climb ladders, ropes, or scaffolds. [R. 33, 1022-23, 1033-34.] With those limitations, the vocational expert testified that Ms. Shanks could perform several types of jobs, including as a machine tender or as a food service worker. [R. 1033-34.] On cross-examination, however, the vocational expert conceded that Ms. Shanks couldn't perform any of the jobs mentioned if Ms. Shanks were additionally limited to jobs that didn't involve production or work quotas. [R. 1034.]

## DISCUSSION

This Court's role in this action is limited to ensuring that "the ALJ applied the correct legal standard, and [that] substantial evidence supports the decision." *Barnett v. Barnhart*, 381 F.3d 664, 668 (7th Cir. 2004) (citation omitted). For the purposes of judicial review, "[s]ubstantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (quotation omitted). If the ALJ committed no legal error and

substantial evidence exists to support the ALJ's decision, the Court must affirm the denial of benefits. Otherwise the Court must generally remand the matter back to the Social Security Administration for further consideration; only in rare cases can the Court actually order an award of benefits. *See Briscoe v. Barnhart*, 425 F.3d 345, 355 (7th Cir. 2005).

> To evaluate a disability claim, an ALJ must use the following five-step inquiry:
>
> (1) [is] the claimant … currently employed, (2) [does] the claimant ha[ve] a severe impairment, (3) [is] the claimant's impairment … one that the Commissioner considers conclusively disabling, (4) if the claimant does not have a conclusively disabling impairment, …can she perform her past relevant work, and (5) is the claimant … capable of performing any work in the national economy[?]

*Dixon v. Massanari*, 270 F.3d 1171, 1176 (7th Cir. 2001) (citations omitted).

Ms. Shanks assigns two errors to the ALJ's decision. She claims that the ALJ should have found her conclusively disabled at Step Three. Next, although not explicitly phrased this way, Ms. Shanks claims that the ALJ erred in computing her residual functional capacity ("RFC"), a determination necessary to Steps Four and Five.

### A. Step Three

At step three, the ALJ must consider whether a disability applicant has one or more conditions that the Social Security Administration considers conclusively disabling. Those conditions, so-called "Listed Impairments," are set forth in 20 C.F.R. Part 404, Subpart P, Appendix 1. Even if a claimant's symptoms don't technically meet all the requirements of a Listed Impairment, however, the ALJ can still find the claimant conclusively disabled if the claimant's symptoms are "at least equal in severity and duration" to a Listed Impairment, in which case the claimant is said to have "equaled" a Listed Impairment. 20 C.F.R. § 416.926(a). Deciding whether a claimant has come close enough to a Listed Impairment to equal it "is

strictly a medical determination." *Hickman v. Apfel*, 187 F.3d 683, 688 (7th Cir. 1999) (citations omitted).

Ms. Shanks argues that Dr. Thomas incorrectly believed that episodes of decompensation triggered by family stressors cannot be used to equal Listed Impairment 12.06, which governs anxiety related disorders.[2] [Dkt. 18 at 7.] Ms. Shanks notes that nothing in the text of the Listed Impairment explicitly imposes such a requirement. [*Id.* at 8.]

The Commissioner's response to this straightforward argument is largely disjointed. The Commissioner discusses at great length why Ms. Shanks didn't meet the Listed Impairment, [*see* dkt. 23 at 11-16], when what is at issue is whether she equaled it. Then the Commissioner claims that no one at the hearing understood the requirements of the Listed Impairment. [*See id.* at 14 ("It appears there was a significant misunderstanding regarding what is required to meet or equal a mental health listing in this case."); *id.* at 16 ("With regard to episodes of decompensation, there was confusion about the what the regulations require[] in multiple ways….[including] about whether such episodes must be generated by work or can be generated by family stressors.").] But ultimately the Commissioner agrees with Ms. Shanks: "Plaintiff's attorney [is] not wrong in stating that episodes of decompensation [do] not have to generate from a work setting." [*Id.* at 16.]

As the Commissioner notes, "Dr. Thomas…would not say [Ms. Shanks] equaled the listing…because her decompensations were triggered by family situations, not by the work setting." [*Id*. 23 at 6.] Given that the Commissioner agrees with Ms. Shanks that Dr. Thomas was wrong in that regard—and thus could have testified as to equivalence—the Court must

---

[2] Although Dr. Thomas' testimony arose specifically in the context of Listed Impairment 12.04, which pertains to affective disorders, the Commissioner agrees that his testimony would apply equally in the context of Listed Impairment 12.06. [*See* Dkt. 23 at 10 n.4.]

remand this matter back to the SSA for further proceedings to consider the effect of his improper testimony.[3]

### B. Determining Ms. Shank's RFC

An ALJ must determine a claimant's RFC—the claimant's physical and mental functional capacities—which the ALJ uses at Step Four to determine whether the claimant can perform his own past relevant work and, if not, at Step Five to determine whether the claimant can perform other work. *See* 20 C.F.R. § 416.920(e). The RFC must include **all** limitations that the claimant suffers. *Id.* § 416.945(a)(2) ("We will consider all of your medically determinable impairments of which we are aware, including your medically determinable impairments that are not 'severe,' as explained in §§ 416.920(c), 416.921, and 416.923, when we assess your residual functional capacity.").

Here, Dr. Thomas opined that Ms. Shanks could only perform "low-stress" jobs that did not require "production" or to satisfy "work quotas," [R. 1032], limitations that the ALJ chose not to incorporate into Ms. Shanks' RFC—despite twice asserting that his RFC was "consistent" with Dr. Thomas' testimony, [R. 27, 30]. The Commissioner argues that the ALJ could disagree with Dr. Thomas' opinions about the necessity of those limitations. [Dkt. 23 at 18.] But to do so, the ALJ must first explain why. *See Diaz v. Chater*, 55 F.3d 300, 308 (7th Cir. 1995) ("An ALJ may not select and discuss only that evidence that favors his ultimate conclusion, but must articulate, at some minimum level, his analysis of the evidence to allow the appellate court to trace the path of his reasoning. An ALJ's failure to consider an entire line of evidence falls

---

[3] Depending on the date of equivalence, Ms. Shanks might not be entitled to Disability Insurance Benefits, only to Supplemental Security Income. [*See id.* 23 at 17.]

below the minimal level of articulation required." (citations omitted)).[4] Although the Commissioner offers reasons why the ALJ might have disagreed with Dr. Thomas' opinion [*see* dkt. 23 at 18], those reasons weren't ones that the ALJ provided; he provided no explanation at all for his departure from Dr. Thomas' opinion. To the contrary, he maintained his findings were consistent with it. Because post-hoc rationalizations aren't permitted—the ALJ's opinion must stand or fall based solely upon what the ALJ actually wrote, *Steele v. Barnhart*, 290 F.3d 936, 941 (7th Cir. 2002) (collecting cases)—a remand is also required for the ALJ to remedy the gap of reasoning in his written opinion.[5]

## CONCLUSION

Despite the limited nature of the applicable standard of review, the Court finds that the ALJ erred in his treatment of Ms. Shanks' applications for benefits. Accordingly, the Court **VACATES** the decision denying benefits and **REMANDS** this matter back to the SSA for further proceedings pursuant to 42 U.S.C. § 405(g) (sentence four). Final judgment will be entered accordingly.

---

[4] *See also Williams v. Bowen*, 664 F. Supp. 1200, 1207 (N.D. Ill. 1987) ("No court should be forced to engage in speculation as to the reasons for an ALJ's decision. If the decision on its face does not adequately explain how a conclusion was reached, that alone is grounds for a remand." (citations omitted)).

[5] Like the Commissioner, [dkt. 23 at 18], the Court is unclear what Ms. Shanks was intending to argue with her extended quotation from SSR 85-15, which provides that one claimant's abilities to handle stress may differ from another claimant with similar medical conditions because of the individualized nature of reactions to stress. To the extent, if any, that Ms. Shanks intended to argue that the ALJ must specifically cite that ruling in the ALJ's opinion, Ms. Shanks has offered no authority for that proposition, and the Court will not impose such a requirement on its own. Of course, even though the ALJ may or may not specifically cite that ruling, the ALJ remains bound to apply its principles in adjudicating Ms. Shanks' claims.

12/31/2009

                                              Jane Magnus-Stinson
                                              United States Magistrate Judge
                                              Southern District of Indiana

**Distribution via ECF only:**

Charles D. Hankey
charleshankey@hankeylawoffice.com

Thomas E. Kieper
UNITED STATES ATTORNEY'S OFFICE
tom.kieper@usdoj.gov